## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

WILLIAM PATRICK GUESS,

        Plaintiff,

Case No. 2:19-cv-12159
HON. GERSHWIN A. DRAIN

v.

ST. MARTINUS UNIVERSITY, and
OAKLAND PHYSICIANS MEDICAL
CENTER, LLC,

        Defendants.

_____/

## OPINION AND ORDER GRANTING RENEWED MOTION FOR SUMMARY JUDGMENT [#30], DENYING MOTION TO AMEND [#35], GRANTING IN PART AND DENYING IN PART MOTION FOR RULE 11 SANCTIONS AND TO STRIKE [#47], DENYING MOTION TO STRIKE REPLY [#48] AND GRANTING MOTION FOR AN EXTENSION OF TIME [#50]

## I.   INTRODUCTION

Presently before the Court is the Defendants' Renewed Motion for Summary Judgment and Plaintiff's Motion to Amend and Supplement. These matters are fully briefed, and a hearing was held on February 4, 2021. For the reasons that follow, the Court grants Defendants' Renewed Motion for Summary Judgment and denies Plaintiff's Motion to Amend and Supplement.

Also, before the Court is the Defendants' Motion for Rule 11 Sanctions and to Strike Second and Third Motions to Amend, filed on January 19, 2021, Defendants' Motion to Strike Reply to Second and Third Motions to Amend, filed on January 19, 2021 and, finally, Plaintiff's Motion for Extension of Time to File Reply, filed on January 27, 2021.  These matters are also fully briefed, and the Court concludes oral argument will not aid in the disposition of these matters. Accordingly, the Court will determine these motions on the briefs.  *See* E.D. Mich. L.R. 7.1(f)(2).  As to these motions, the Court grants in part and denies in part Defendants' Motion for Rule 11 Sanctions and to Strike, denies Defendants' Motion to Strike Reply and grants Plaintiff's Motion for an Extension of Time.

## II.  FACTUAL BACKGROUND

### A.  PLAINTIFF'S DISABILITY AND ADMISSION TO ST. MARTINUS UNIVERSITY

Plaintiff suffers from Attention Deficit Hyperactivity Disorder ("ADHD"). On June 25, 2013, Plaintiff accepted an offer of admission to St. Martinus University (SMU) medical school to begin during the July 2014 semester. ECF No. 39, PageID.1246.  SMU is a private medical school in Curacao, a Dutch Caribbean Island in the Lesser Antilles off the coast of Venezuela.  Plaintiff asserts that, prior to enrolling at St. Martinus University, he communicated with the University's top

executive – Jeff Bowman – several times concerning his ADHD diagnosis. ECF No. 35, PageID.857, 866.   Plaintiff claims he "agreed to attend St. Martinus University, and Defendants agreed to accommodate his disability." *Id.*

Specifically, Plaintiff avers that Bowman informed Plaintiff that his "disability would not be a problem." *Id.* Plaintiff further asserts that Bowman told him that the University had accommodated other students with disabilities for regular classes, clinical rotations and Step 1 examinations. *Id.* Plaintiff forwarded all of the necessary documents for his accommodation request to Dr. Schiff, who was the University's dean at the time. *Id*. at PageID.1464.   Plaintiff met with Dr. Schiff in his office to discuss the accommodation request documents. *Id*.   During this discussion, Dr. Schiff told Plaintiff that in regard to his "request for disability accommodations, he was all set." *Id.*

Even though SMU accommodated Plaintiff's request for extra time for examinations, a review of Plaintiff's official transcripts reveals that Plaintiff struggled to pass many of his courses, taking some courses repeatedly before receiving a passing grade.  ECF No. 39, PageID.395-98 (evidencing Plaintiff failed an anatomy course three times before receiving a passing grade, he failed to pass biochemistry after four attempts, and passed neuroscience after taking the course for the third time among other failing grades in required courses).

## B. Physician Licensing and Prometric Testing

Physician licensing in the United States is governed by the National Board of Medical Examiners ("NBME"), which administers three phases of testing throughout a student's attendance at medical school, commonly referred to as Step 1, Step 2, and Step 3 testing. *Id*. at PageID.242 (citing https://www.usmle.org/step-1/). Generally, students attempt the Step 1 exam after their second year of medical school when they have completed the basic classroom coursework. *Id*. at PageID.243 (citing https://www.usmle.org/frequently-asked-questions/).

However, prior to taking the Step 1 exam, many students commonly take preparatory examinations administered by Prometric. Prometric is not a party to this action. It is an independent company that provides testing centers around the world in a variety of fields, including medicine. ECF No. 30, PageID.244 (citing https://www.prometric.com/about-us/about-prometic). SMU had a policy that students achieve a particular score on the Prometric examination in order to be eligible to take the NBME Step 1 exam. *Id*. at PageID.336. Plaintiff took the Prometric exam four times, but never attained the requisite score for eligibility to take the NBME Step 1 exam. *Id*.

Plaintiff claims that when he took his Prometric tests, the employee working at the testing center informed him that she did not see that Plaintiff had been granted any accommodations for taking the test. *Id*. at PageID.334. Plaintiff

4

maintains that the clinical Dean of SMU, Mark Poulin, informed him that he had forgotten to arrange for Plaintiff's accommodations at the testing center. Indeed, in a February 6, 2019 email, Poulin informed Plaintiff that:

> William I have scheduled the exams for the blocks we discussed a few weeks back – One change – I scheduled the first two for normal time and the last 2 with 1.5X accommodation – I realized only after the first two that you had requested accommodation and the NBME registration process has no mechanism for me to make changes in an order once I push the order button and add to the roster.  Permit will come in email as in the past!

ECF No. 39, PageID.1491. In June of 2019, Plaintiff contacted Prometric and was informed there was no "accommodation request for" his June 4, 2019 examination order.

Plaintiff contends that he completed all of the necessary paperwork to request an accommodation and "then it's up to the school, so it was Mark Poulin, the clinical dean, to provide the stuff" to Prometric.  ECF No. 15, PageID.355-56. Plaintiff alleges Defendants failure to accommodate his disability during the Prometric examinations deprived him of adequate time to successfully pass the examinations.

However, Defendants counter that Plaintiff was required to request accommodations directly from Prometric, who administers the examinations.  A review of the Prometric Accommodation Request Packet suggests candidates for examinations seeking accommodations must fill out the request packet themselves

before submitting their request.[1]   Once the packet is complete, including the candidate's signature authorizing "the release of the attached forms to Prometric staff to review and arrange the requested accommodation[,]" the candidate is directed to return the packet to Prometric directly. *Id*. at 2-3.

### C.  LAP FEES

Plaintiff's Second Amended Complaint further alleges that Defendants began charging him "lack of academic progress" (LAP) fees which were not provided for in the contract between the parties.  During his deposition, Plaintiff explained that in 2016, the University began assessing lack of academic progress ("LAP") fees, which charged students a monthly fee of $200.00 for failure to complete the Step 1 exam within "six months after you finish your basic medical sciences."  *Id*. at PageID.339.

### D.  PLAINTIFF'S   TUITION   PAYMENTS   AND   WITHHOLDING   OF TRANSCRIPTS

On July 27, 2016, Plaintiff signed an Acknowledgement of Debt, which stated he currently had an outstanding balance of $20,215 with the first installment payment of $6,750 due on or before September 21, 2016.  *Id*. at PageID.403.  The Acknowledgment further stated that Plaintiff's second installment payment was due on or before December 20, 2016, and the remaining balance would be due on

---

[1] www.prometric.com/AccomodationRequestPacket

or before March 20, 2017.  *Id*.  Finally, "[e]ach late payment will incur a $50.00 per day late fee."  *Id*.  In signing this document, Plaintiff acknowledged that his "transcripts will be withheld until the full payment [is] made."  *Id*.

Defendants' claim Plaintiff has yet to pay his outstanding balance, however the University forwarded his official transcript to his counsel on November 23, 2020.  *Id*. at PageID.394-98.  When Plaintiff received his official transcript, he realized that his grade point average did not increase after he successfully repeated several classes as he assumed it would.  Instead, Plaintiff was surprised to learn his grade point average on his official transcript was .08.  Plaintiff maintains that his grade point average should have been 2.1 or 2.2 after he successfully repeated the courses he had failed.

Plaintiff transferred to Washington Medical School in 2019, however he claims he could not enroll in any classes because the Defendants refused to release his official transcript until just recently.

### E.  DEFENDANTS SMU AND OPMC

St. Martinus is a limited liability company organized under the laws of Curacao.  ECF No. 30, PageID.267.  The General Managing Director of SMU is Sanjay Sharma, who along with his wife, Priyam Sharma, purchased the University in 2010.  *Id*.  Mrs. Sharma formerly served as the Director of St. Martinus University in 2011 and 2012.  *See* ECF No. 39, PageID.1400.  When Plaintiff

became a student in 2014, Mrs. Sharma was the Dean of Administration at the University. *Id.* at PageID.1402. Mrs. Sharma testified at her deposition that she believed she and her husband still owned a controlling interest in the University, but the University was run by a company in Curacao and she has "zero say" in what to do and what not to do with respect to the University. *Id.* at PageID.1411.[2]

In May of 2016, SMU entered into an agreement with Pontiac General Hospital (PGH) wherein the hospital agreed to allow some of the University's medical students to do their clinical rotations at PGH in Pontiac, Michigan. *Id.* at PageID.269-73. Defendant Oakland Physicians Medical Center, LLC (OPMC), is a Michigan limited liability company established for the purpose of operating PGH. The CEO and Chairman of the Board at PGH is an individual named Sanyam Sharma. Sanyam Sharma is Priyam and Sanjay Sharma's son. Sanyam Sharma owns Sant Partners, which has always been a majority shareholder of PGH when it was purchased in 2016. ECF No. 39, PageID.1377. The nonvoting shares, which are a security interest in PGH, are owned by Priyam Sharma. *Id.* at 1376.

---

[2] In their Motion for Summary Judgment, Defendants assert SMU is "majority owned by International Healthcare Holdings, BV, a Curacao Company, and its minority shareholders consist of Sisters of Rosendal, Mr. Roger Courtney, and Caribbean Healthcare Holdings." ECF No. 30, PageID.252. However, nothing in the attached exhibits establishes Defendants' assertion as to ownership of the University.

When PGH was purchased by her son, Mrs. Sharma began working as the hospital's Designated Institutional Officer, as well as the Chief Operations Manager, and she no longer held a position with the University. *Id*. at PageID.1403. At the hospital, Mrs. Sharma is in charge of medical education at PGH, which "trains third and fourth year medical students of St. Martinus University." *Id.*

### F.  PROPOSED DEFENDANT ST. MARTINUS ADMINISTRATIVE SERVICES

In his proposed third iteration of his allegations, Plaintiff seeks to add another Defendant – St. Martinus Administrative Services ("SMAS"), which is a Texas limited liability company. ECF No. 35, PageID.850. Plaintiff alleges that SMAS and the University had a contract wherein SMAS would collect the University's fees that it charged to its students. *Id*. at PageID.852-53. Mrs. Sharma testified during her deposition that SMAS was set up to help American and Canadian students with "with the financial things." ECF No. 39, PageID.1406. In consideration for collecting the tuition fees, SMAS would retain 5% of the total fees collected. *Id.* at PageID.853. Once a student pays his tuition and LAP fees, SMAS will issue a financial clearance and the University will release the student's official transcript. ECF No. 39, PageID.1447.

### III.    PROCEDURAL POSTURE

Plaintiff filed the original complaint in this matter on July 23, 2019 alleging a failure to accommodate claim under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12181 *et seq*., and a claim for breach of contract.  *See* ECF No. 1. Two weeks later and before service on the Defendants occurred, Plaintiff amended his complaint on August 7, 2019.  ECF No. 4.  Plaintiff's Amended Complaint alleged the same ADA and breach of contract claims.  *Id*.  Following a January 23, 2020 scheduling conference with the Court, and at the express instruction of the Court, Plaintiff filed a Second Amended Complaint.  *See* ECF No. 15.  The Court entered a Scheduling Order following the conference and set an amendment of pleadings deadline for January 23, 2020.  ECF No. 13.  The Court's Scheduling Order required discovery to be completed no later than July of 2020.  *Id.*

Due to the COVID-19 pandemic's impact on the ability to conduct discovery, the Court granted the Defendants' Unopposed Motion to Extend Scheduling Order and extended the discovery cutoff through October 9, 2020. ECF No. 22.  The Court also scheduled the bench trial to commence on February 1, 2021.

On November 23, 2020, Defendants filed their Renewed Motion for Summary Judgment.  On December 4, 2020, Plaintiff moved for leave to file a third amended complaint.  ECF No. 32.  Three days later, Plaintiff moved to

amend and supplement Complaint under Fed. R. Civ. P. 15(a) & 15(d).  ECF No. 35.  On January 14, 2021, Plaintiff filed a Motion to Withdraw the motion for leave to file a third amended complaint.  ECF No. 43.  Defendants filed a Response to Plaintiff's Motion to amend and supplement on January 4, 2021.  ECF No. 42.

Plaintiff filed a Reply in support of his Motion to amend and supplement on January 18, 2021.  ECF No. 45.  Defendants moved to strike Plaintiff's untimely Reply brief on January 19, 2021.  *See* ECF No. 48.  Plaintiff moved for an extension of time to file a Reply brief in support of his motion to amend and supplement on January 27, 2020. *See* ECF No. 50.

## IV.   LAW & ANALYSIS

### A.  Defendants' Renewed Motion for Summary Judgment

#### 1.  Standard of Review

Federal Rule of Civil Procedure 56(a) empowers the court to render summary judgment forthwith "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001).  The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice.  The procedure is not a disfavored procedural shortcut.  *Celotex Corp. v. Catrett*, 477

U.S. 317, 327 (1986); *see also Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.,* 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S.

253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).   Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252.  Rather, there must be evidence on which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (citing *Anderson*, 477 U.S. at 252).

### 2.  ADA Discrimination

Plaintiff's ADA discrimination claim fails for several reasons.  As an initial matter, none of the named Defendants or SMAS administered the Prometric testing that is at issue here.  Plaintiff does not claim SMU failed to accommodate his ADHD during his academic examinations.  Plaintiff also does not claim a failure to accommodate with respect to remedial academic examinations he took at PGH. Plaintiff's allegations all stem from the failure to accommodate him during his Prometric examinations.

Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns or operates a place of

accommodation."  42 U.S.C. § 12182(a).  Title III prohibits discrimination against

persons with disabilities in professional examinations:

> Any person that offers examinations . . . related to applications,
> licensing, certification, or credentialing for . . . professional, or trade
> purposes shall offer such examinations . . . in a place and manner
> accessible to persons with disabilities or offer alternate accessible
> arrangements for such individuals.

*Gonzales v. National Bd. of Medical Examiners*, 225 F.3d 620, 625 (6th Cir. 2000).

In *Binno v. American Bar Ass'n*, 826 F.3d 338 (6th Cir. 2016), a legally

blind individual sued the American Bar Association (ABA) under the ADA

claiming his lack of success was due to the ABA-mandated and discriminatory law

school admissions test (LSAT), which he failed to complete precluding his ability

to gain admission to an accredited law school.  *Id*. at 341. The *Binno* plaintiff

argued the term "offer" under Title III should be interpreted broadly to include the

ABA, which "mandates the LSAT in law school admissions."  *Id.* at 343.

The *Binno* court rejected the plaintiff's argument and held "[a]n entity

offering the exam must have significant control over its administration or

accommodation."  *Id*. at 347.  This means that "an entity that offers examinations

under this provision must be able to provide an accessible place and manner for

administration of the tests . . . ."  *Id*. at 346.   The Sixth Circuit further held that:

> Binno has not pleaded any facts in his complaint that demonstrate that
> Standard 503 gives the ABA authority over the manner and
> administration of the LSAT.  Nor has he pleaded any facts that show

14

that the ABA has authority to grant accommodations or make other arrangements in connection with the exam.   Indeed, Binno undoubtedly cannot plead such facts, because it is the LSAC, and not the ABA, that develops and administers the LSAT and grants accommodations in the testing format.   Because Binno has not pleaded facts to support a facially plausible claim, his Title III claim against the ABA fails as a matter of law.

*Id.* at 348.

Here, similar to the facts in *Binno*, Plaintiff has not presented any evidence that SMU, OPMC or SMAS "have significant control over" the administration of the Prometric testing and an ability to provide "an accessible place and manner for administration of the [Prometric] tests." *Id.* at 346.   Plaintiff claims SMU owns the Prometric tests, however this is inaccurate.   Mr. Poulin's February 2019 email to Plaintiff reveals that SMU orders and schedules the Prometric tests for students. SMU does not have the ability to administer the actual Prometric test to SMU's medical students.   The Prometric's Accommodation Request Packet supports the conclusion that it was up to the medical students to request accommodation directly from Prometric rather than University officials.   Prometric's packet requires candidates for professional examinations who seek accommodations to fill out the packet and sign a release so that "Prometric staff [can] review and arrange the requested accommodation."

Here, Prometric is the entity that "offers" the examinations and it must do so in "an accessible place and manner for administration of the tests." *Binno*, 826 F.

15

3d at 346.   Plaintiff has provided no evidence suggesting any of the named Defendants or SMAS have significant control over the administration of the Prometric examinations.    Plaintiff has therefore failed to state a viable discrimination claim under the ADA claim against the Defendants and SMAS.

Moreover, even if Plaintiff could show that SMU had significant control over the Prometric examination, his claim would still fail because SMU is a foreign, private institution and Title III of the ADA does not apply extraterritorially.  "It is a longstanding principle of American law that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States." *Morrison v. Nat'l Aust. Bank. Ltd*., 561 U.S. 247, 255 (2010).  When a statute is silent as to extraterritorial application, it has none. *Id.* Title III, unlike Title I of the ADA which expressly states its extraterritorial application, does not explicitly state that it applies outside of the United States. *See Awodiya v. Ross Univ. Sch. of Med*., 391 F. Supp.3d 1098 (S.D. Fla. 2019). "[W]hen a statute provides for some extraterritorial application, the presumption against extraterritoriality operates to limit that provision to its terms." *Morrison*, 561 U.S. at 265.

Numerous courts have concluded that the ADA does not apply to a foreign university. *See Awodiya,* 391 F. Supp.3d at 1101 (concluding the ADA's text provides no extraterritorial application of anti-discrimination standards to foreign

16

institutions offering public accommodations); *see also Archut v. Ross Univ. Sch. Of Veterinary Med.*, 580 F. App'x 90 (3d Cir. 2014)(affirming district court's conclusion that the requirements of the ADA with respect to institutions offering public accommodations do not apply extraterritorially to require foreign institutions to provide reasonable accommodations to American citizens with disabilities.); *Galligan v. Adtalem Glob. Educ. Inc.,* No. 17-c-3610, 2019 U.S. Dist. LEXIS 17218 (N.D. Ill. Feb. 4, 2019) (same).  Even where the challenged testing took place in the United States, an ADA claim will not arise against a foreign university where its conduct occurred in a foreign country.  *Awodiya*, 391 F. Supp.3d at 1106.

Even though Title III does not apply extraterritorially, this does not end the inquiry.  *Galligan,* 2019 U.S. Dist. LEXIS 17218, at *8.  "If the statute is not extraterritorial, then [the court must] determine whether the case involves a domestic application of the statute, and [does so] by looking to the statute's focus." *Id*. (quotation marks omitted).  Here, the purported discrimination and failure to accommodate would have taken place in Curacao where SMU administrators failed to provide Plaintiff with accommodations during Prometric testing.  Because the ADA does not apply to SMU's conduct, Defendant SMU is also entitled to dismissal of Plaintiff's ADA claim for this additional reason.

Plaintiff argues that the decisions holding the ADA does not apply to foreign universities are distinguishable from the facts here because SMU has two campuses, one of which is in the United States.  Plaintiff argues that through SMU's contract with PGH to provide students with the opportunity to complete their clinical rotations in the United States, the University therefore has an American campus.  Additionally, Plaintiff maintains that the Sharma family "actually owns and controls each defendant." ECF No. 39, PageID.1237.  Plaintiff further asserts that Defendants have waived the extraterritorially defense by virtue of Mr. Poulin's assurance that Plaintiff would receive his disability accommodations.

Here, Plaintiff's assertion that PGH is a campus of St. Martinus University is not supported by the record or applicable law.  Under Michigan law, "there is a presumption that the corporate form will be respected."  *Servo Kinetics, Inc. v. Tokyo Precision Instruments Co.,* 475 F.3d 783, 798 (6th Cir. 2007).  Even if the Defendants are owned by the same family, they are distinct legal entities and must be treated as such.  *See Lim v. Miller Parking Co.*, 560 B.R. 688 (E.D. Mich. 2016) (holding that corporate entities which, while owned by members of the same family, had separate historical roots, kept separate books and observed adequate corporate formalities, were not alter egos, and a veil that separated them could not be pierced).

Finally, Plaintiff's argument concerning waiver is not well taken. Plaintiff provides no support that an entity can, through an alleged statement of an agent, waive the presumption against application of American law abroad.

For all of the above reasons, Plaintiff's ADA claim in the Second Amended Complaint fails as a matter of law.

### 3. Breach of Contract

In his Second Amended Complaint, Plaintiff alleges that:

14. After failing to provide Plaintiff with the accommodations he was entitled to Defendant charged him for failing to take the Step 1 exam even though Defendant had no contractual right to make such charges.
          *                    *                    *
27. Defendant's conduct as described in this complaint constituted a breach of contract between the parties, as it charged him fees without any agreement and refused to provide transcripts until the fees were paid.

28. Plaintiff has been damaged by Defendant's breach for lost pay, Plaintiff would have received had he been able to test on time, emotional damage, increased psychological damage, increased psychological treatment and unauthorized fees.

ECF No. 15, PageID.72-73.

To state a breach of contract claim under Michigan law, a plaintiff must establish the existence of a valid contract. *In re Brown*, 342 F.3d 620, 628 (6th Cir. 2003). A plaintiff must then establish the elements of his contract claim, which include: "(1) the terms of the contract, (2) breach of those terms by the

[defendant], and (3) injury to the [plaintiff] resulting from the breach." *Bowlers' Alley, Inc. v. Cincinnati Ins. Co.*, 32 F. Supp.3d 824, 831 (E.D. Mich. 2014).

Plaintiff does not attach any contract to his Second Amended Complaint and his allegations are devoid of the requisite factual detail to establish "the grounds of his entitlement to relief." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007). The Second Amended Complaint fails to identify the specific contract and contractual provision that was breached. The damages sought by the alleged breach are speculative lost wages and emotional damages.

In response, Plaintiff argues that he has properly pleaded a breach of contract claim "[i]n his Proposed Third Amended & First Supplemental Complaint." ECF No. 39, PageID.1235. Plaintiff attaches the same SMU documents in support of his response in opposition to the Defendants' Renewed Motion for Summary Judgment as those he filed in support of his Motion to Amend. The documents include a registration form, student locator form and general student contract, all of which were signed by Plaintiff on July 18, 2014. Plaintiff also includes SMU's Rules and Responsibilities for Clinical Rotation Students, which is unsigned.

Here, Plaintiff's acknowledgement that his breach of contract claim as currently drafted requires another amendment is a tacit admission that the Second

20

Amended Complaint's allegations are insufficient to withstand Rule 12(b)(6) and Rule 56(a) scrutiny. This claim likewise fails as a matter of law. The Court will address whether Plaintiff should be provided an opportunity to file an amended breach of contract claim in its discussion of Plaintiff's Motion to Amend.

Accordingly, based on the above considerations, Defendants SMU and OPMC are entitled to judgment in their favor on all of the claims raised in Plaintiff's Second Amended Complaint.

### C. Plaintiff's Motion to Amend

### 1. Standard of Review

The resolution of Plaintiff's Motion to file a Third Amended Complaint is governed by Federal Rule of Civil Procedure 15. It states in relevant part:

**(a) Amendments Before Trial**.

(1) ***Amending as a Matter of Course***. A party may amend its pleading once as a matter of course within:

(A) 21 days after serving it,

(B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

(2) *Other Amendments*. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

Fed. R. Civ. P. 15(a).

Rule 15(a) is intended to "enable a party to assert matters that were overlooked or were unknown at the time the original complaint or answer was interposed." *Iron Workers Local No. 25 Pension Fund v. Klassic Services, Inc.,* 913 F. Supp. 541, 543 (E.D. Mich. 1996).

Leave to amend "should not be denied unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility." *Ziegler v. IBP Hog Mkt., Inc.,* 249 F.3d 509, 519 (6th Cir. 2001). An amendment is futile if it "could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.,* 203 F.3d 417, 420 (6th Cir. 2000). However, while the futility of an amendment is normally measured by the lenient, pleading-only standard of Rule 12(b)(6), Rule 56 is the proper measure when discovery has closed, a motion for summary judgment has been filed, the plaintiff has had an opportunity to respond to such motion, and the "proposed amended claims involve the same relevant facts and the same legal standards as the facts and claims already before the Court on summary judgment." *Thompson v. City of Lansing*, No. 1:08-cv-409, 2009 U.S. Dist. LEXIS 24133, at *27-28 (W.D. Mich. Mar. 20, 2009) (Bell, J.), aff'd by *Thompson v. City of Lansing*, 410 F. App'x 922 (6th Cir. Feb. 10, 2011).

22

## 2.  Undue Delay, Lack of Due Diligence and Prejudice

On December 4, 2020, with discovery closed and a dispositive motion pending, Plaintiff moved to amend his Second Amended Complaint.  Specifically, Plaintiff seeks to (1) add a new defendant, SMAS, (2) add additional allegations in support of his breach of contract claim,  (3) add a promissory estoppel claim, and (4) add a retaliation claim under the ADA.  Defendants assert that Plaintiff has unduly delayed seeking leave to amend his operative Complaint and allowing an amendment at this late stage of the proceedings will cause substantial prejudice to Defendants.

Conversely, Plaintiff argues that he has not unduly delayed seeking leave to amend because he did not realize SMAS's role in the events leading to this lawsuit until the October 23, 2020 deposition of Mathew Chako, an SMAS employee, occurred. Plaintiff further asserts that Defendants have not sufficiently supported their claim of substantial prejudice if an amendment is permitted at this stage of the proceedings.

Plaintiff's argument that he has not unduly delayed seeking leave to amend—for the majority of his proposed amendment—is not well taken. Plaintiff's First Amended Complaint, filed on August 7, 2019, includes as an exhibit a document identifying Mathew Chako and SMAS.  Moreover, Plaintiff's

23

proposed Third Amended Complaint incorporates information that is readily

available to the general public.  ECF 35, PageID.850.

As to Plaintiff's allegations in regard to his new breach of contract and

promissory estoppel claims, Plaintiff offers no explanation for the delay.  His

proposed amendment alleges that Defendants entered into an oral contract with

him in 2013.  ECF No. 35, PageID.857-860.  Specifically, Plaintiff alleges that he

spoke with SMU's top executive, Jeff Bowman, several times and informed Mr.

Bowman of his ADHD and that Bowman told Plaintiff that his "disability would

not be a problem."  *Id*. at PageID.858.  Bowman is further alleged to have

"explained that Defendant St. Martinus University had enrolled other medical

students with disabilities, and that it had accommodated their disabilities for

regular classes, clinical rotations, and Step 1 examinations."  *Id.*  Plaintiff's

proposed promissory estoppel claim relies on the same factual allegations.  *Id.* at

PageID.867-68.  All of these facts have been known to Plaintiff since 2013.

Plaintiff's attempt to argue he has not unduly delayed seeking amendment to add

these allegations and claims is not supportable and contravenes Plaintiff's assertion

that he has acted with due diligence.

As to Plaintiff's proposed ADA retaliation claim, the factual underpinnings

of this claim are not so clear cut as to evidence of undue delay.  Specifically,

Plaintiff alleges that Defendants withheld his official university transcript until

November 23, 2020. *Id.* at PageID.862. Because of this withholding, Plaintiff asserts that he was unable to take certain medical courses at Washington Medical School and could not take medical board examinations needed to become a licensed doctor. *Id.* These factual allegations are contained in Plaintiff's Second Amended Complaint and Plaintiff does not explain the delay in bringing an ADA retaliation claim based on these facts.

However, Plaintiff's proposed Third Amended Complaint also alleges that once Defendants released his official transcript, he compared it with his unofficial transcript and discovered that his grade point average had changed from a 2.1 to .08. *Id.* at PageID.863. Plaintiff alleges that because he repeated multiple courses, his official transcript should have evidenced a 2.2 grade point average. *Id.* Plaintiff maintains Defendants retaliated against him for filing the instant lawsuit by lowering his grade point average. *Id.* at PageID.867. Because Plaintiff could not have discovered the facts related to his lowered grade point average on his official transcript until Defendant SMU released the transcript, the Court cannot conclude that this aspect of his proposed retaliation claim was not pursued with due diligence on Plaintiff's part.

However, as to the remainder of Plaintiff's proposed Third Amended Complaint, the Court concludes Plaintiff is not entitled to an amendment because he acted with undue delay in bringing his claims. Plaintiff is not asserting "matters

that were overlooked or were unknown at the time the original complaint or answer was interposed[,]" thus, the Court declines to grant his requested relief. *Iron Workers Local No. 25 Pension Fund,* 913 F. Supp. at 543.

### 3. Futility

Defendants further argue that all of the claims Plaintiff seeks to add are futile and would not survive a Rule 12(b)(6) motion to dismiss. Plaintiff counters that his amended claims are not futile. The Court agrees that Plaintiff's claims are futile, including his proposed ADA retaliation claim, thus denial of his motion to amend is appropriate on this separate basis as well.

### a. SMAS – Failure to Accommodate

Here, as to Plaintiff's proposal to allege a failure to accommodate claim against SMAS, such a claim fails for the same reasons identified by the Court in its discussion of the Defendants' Renewed Motion for Summary Judgment. Nowhere in Plaintiff's proposed amendment does he allege that SMAS "offered" testing as that term is used in the ADA. Rather, Plaintiff alleges that SMAS "has decided whether to clear students to take the NBME examination financially" and that it collected fees from Plaintiff for the Prometric testing. ECF No. 35, PageID.854-61. Plaintiff fails to allege, and nor could he based on the record before the Court, that SMAS offered the Prometric test. Moreover, the proposed amendment suggests that SMAS is simply a fees processor. Plaintiff's proposed allegations

reveal that SMAS has no control over the Prometric testing in either its administration or accommodations.  This claim is therefore futile.  *See Binno*, 826 F.3d at 346-48.

### b.  ADA Retaliation

As to Plaintiff's proposed retaliation claim, his theory that Defendants retaliated against him for filing the instant lawsuit by withholding his transcripts "from May 2019 to November 23, 2020" will not withstand a Rule 12(b)(6) Motion to Dismiss.  As an initial matter, the same extraterritorial application problem exists with respect to Plaintiff's ADA retaliation claim against SMU.  In any event the claim fails against SMU, SMAS, and OMPC because Plaintiff cannot establish the requisite causal connection for his proposed retaliation claim.

In order to allege an ADA retaliation claim, Plaintiff must state that (1) he engaged in activity protected under the ADA; (2) Defendants knew of that activity; (3) Defendants took an adverse action against him; and (4) there was a causal connection between the protected activity and the adverse action.  *Morrissey v. Laurel Health Care Co*., 946 F.3d 292, 304 (6th Cir. 2019).  The causal connection element requires that "but for" the plaintiff engaging in the protected activity, the defendant would not have taken the adverse action."  *Pierce v. GM LLC*, No. 14-14491, 2016 U.S. Dist. LEXIS 124631, at *30-31 (E.D. Mich. Sep. 14, 2016).

27

Plaintiff's proposed ADA retaliation claim based on the withholding of his transcripts in retaliation for filing this lawsuit does not state a causal connection between the protected activity – which occurred in July of 2019 – and the adverse action – which occurred prior to the protected activity – in May of 2019. Permitting amendment to allow this aspect of Plaintiff's ADA retaliation claim would be futile. *Pierce*, 2016 U.S. Dist. LEXIS 124631, at *30-31.

As to the allegations concerning Plaintiff's low grade point average on his official transcript in retaliation for the instant lawsuit, Defendants do not make any argument in regard to futility other than arguing Plaintiff's transcripts had been withheld prior to inception of this lawsuit for the simple reason that Plaintiff was behind on his tuition.  Indeed as early as 2016, Plaintiff was overdue in his tuition payments by $20,215.00 and he was placed on a payment plan by the University. ECF No. 30, PageID.403.

The Court concludes this claim is likewise futile.  Plaintiff alleges that SMU lowered his grade pointe average in his official transcript.  As support for this claim, Plaintiff provides a transcript with a 2.15 grade pointe average through Plaintiff's August 2016 semester, or after he had obtained 110 total credit hours. Plaintiff also relies on the official transcript provided by SMU in November of 2020, which reveals a .082 grade point average.  However, the official transcript contains grades through Plaintiff's February 2018 semester.  At this point, Plaintiff

28

had accumulated 252 total credits.  Plaintiff's argument does not support his grade point average was erroneously lowered by the University in retaliation for the filing of the instant lawsuit.  Rather, the official transcript reflects all of the course work and grades for Plaintiff's entire academic career at SMU, including that he failed five additional classes between his May 2017 through February 2018 semesters.  Plaintiff's low grade point average was not an inaccurate reflection of his performance as a medical student at SMU. Because Plaintiff cannot establish a causal connection between his lower grade point average and his protected conduct, he cannot establish Defendants engaged in unlawful retaliation in violation of the ADA.  *Pierce*, 2016 U.S. Dist. LEXIS 124631, at *30-31.

### c.   Breach of Contract and Promissory Estoppel Claims

Plaintiff seeks to revise his breach of contract allegations, as well as seeks to add a new breach of contract claim alleging an oral contract to accommodate his disability and a twin promissory estoppel claim.  As to Plaintiff's proposed claim that SMAS breached a purported agreement about LAP fees, this claim is due to fail because Plaintiff fails to allege that SMAS was a party to the enrollment contract between Plaintiff and SMU.  Nor does Plaintiff allege OPMC is a party to Plaintiff's enrollment contract.  In order to prevail on a breach of contract claim under Michigan law, a plaintiff must prove the existence of a contract between the parties. *Webster v. Edward D. Jones & Co.*, 197 F.3d 815, 819 (6th Cir. 1999).

For this reason, Plaintiff's proposed breach of contract claim as to the assessed LAP fees against SMAS and OPMC would be subject to Rule 12(b)(6) dismissal.

As to Plaintiff's revised breach of contract allegations against Defendant SMU, Plaintiff's proposed claim continues to fail to pass Rule 56(a) muster. *Thompson v. City of Lansing*, 2009 U.S. Dist. LEXIS 24133, at *27-28 (Rule 56 is the proper measure of futility on a motion to amend when discovery has closed, a motion for summary judgment has been filed, the plaintiff has had an opportunity to respond to such motion, and the "proposed amended claims involve the same relevant facts and the same legal standards as the facts and claims already before the Court on summary judgment.")

In support of his claim, Plaintiff provides a signed registration form and general student handbook. Neither state that the fee structure cannot be altered, and in fact, the registration form suggests that SMU had the right to modify the fee structure because students like Plaintiff agreed to comply with the University's rules "as may be promulgated from time to time . . . ." ECF No. 39, PageID.1520. The only document that discusses the LAP fees is provided for in the Rules and Responsibilities of Clinical Student. However, Plaintiff never did clinical rotations, and the form is blank and unsigned. Thus, similar to the deficiencies with respect to the Second Amended Complaint, Plaintiff's proposed breach of

30

contract claim against SMU fails to identify the contractual provision that SMU allegedly breached.

In regard to the Plaintiff's proposed oral contract claim, the statute of frauds bars this claim. Michigan's statute of frauds requires a contract to be "in writing and signed with an authorized signature by the party to be charged with the agreement, contract, or promise" if by its terms the agreement "is not to be performed within 1 year from the making of the agreement." MICH. COMP. LAWS § 566.132(1)(a). If an agreement is "not capable of performance within one year" it is "barred by the statute of frauds." *Dumas v. Auto Club Ins. Ass'n*, 473 N.W.2d 652, 658 (Mich. 1991). The alleged conversations between Plaintiff and Mr. Bowman occurred prior to Plaintiff's acceptance of the admission offer from SMU, which occurred on June 25, 2013. Plaintiff alleges he did not begin taking classes until July of 2014; thus, he did not begin taking his courses until a year later. As such, Defendants could not possibly accommodate his testing needs before he began taking his classes. Therefore, Plaintiff's oral contract claim fails as a matter of law. *See Lawton v. Contract Purchase Corp.*, 299 N.W. 777, 780 (Mich. 1941) (recognizing that the acceptance of a contract on June 22, when work did not begin until June 24 the following year, meant that the contract was void).

As to the promissory estoppel claim, in order for a plaintiff to escape the limits of the statute of frauds, the oral agreement must at the very least be "definite

and clear." *Marrero v. McDonnell Douglas Capital Corp.*, 200 Mich. App. 438, 442 (1993).   In *McMath v. Ford Motor Co.*, the plaintiff alleged that he was encouraged to resign from his job to work elsewhere and assured the employer "would take good care of him and he had no future worries economically."  259 N.W.2d 140, 143 (Mich. App. 1977).   The Michigan Court of Appeals held this was insufficiently specific.   Here, Plaintiff pleads only that he was told his disability "would not be a problem" and that he was "all set."   These vague promises are insufficiently specific to escape the statute of frauds.  *Marrero,* 200 Mich. App. at 442; *McMath* 259 N.W.2d at 143.

Accordingly, the Court will deny Plaintiff's Motion to file a Third Amended Complaint because his motion was brought with undue delay and seeks to add claims that are futile.

### D.  Defendants' Motion for Rule 11 Sanctions and to Strike Motions for Leave to Amend and Supplement Complaint

Defendants also move for Rule 11 sanctions against Plaintiff for bringing multiple Motions to Amend his Second Amended Complaint.  Defendants also request that the Court strike Plaintiff's repetitive Motion to Amend. *See* ECF Nos. 32 and 35.

Federal Rule of Civil Procedure 11(b) states:

> By presenting to the court a pleading, written motion, or other paper . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) is not presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the costs of litigation;
> (2) the claims, defenses, and other legal contentions are warranted by existed law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law[.]

Fed. R. Civ. P. 11(b). When a party or attorney violates the requirements of Rule 11(b), Rule 11(c) allows the district court to impose an appropriate sanction. Fed. R. Civ. P. 11(c)(1).

Plaintiff filed his first Motion for Leave to File a Third Amended Complaint on December 4, 2020. This motion sought to add SMAS. Defendant filed a response to this motion on December 18, 2020. Two days later, Plaintiff filed a second Motion for Leave to File a Third Amended Complaint. This motion sought to add SMAS, as well as new claims against all of the Defendants. Plaintiff did not refer to or withdraw his first Motion to Amend.

Here, Plaintiff filed at least two separate motions seeking the same relief. The Sixth Circuit has upheld sanctions against an attorney where "actions were taken, at the very least, in the face of an obvious risk that he was increasing the work of the other party without advancing the litigation." *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 647 (6th Cir. 2006). Plaintiff's

conduct has caused Defendants to incur the time and expense of responding to two Motions to Amend seeking the same relief.  Accordingly, the Court will award Rule 11 Sanctions in the amount of Defendants' reasonable attorney fees and costs incurred as a result of having to respond to the first Motion to Amend, as well as the fees and costs incurred in bringing instant Motion for Rule 11 Sanctions. Defendants shall submit their billing statements and affidavits in support of their attorney fees and costs incurred as a result of responding to Plaintiff's first Motion to Amend and as a result of filing the instant motion for Rule 11 sanctions no later than April 26, 2021.

The Court declines to strike Plaintiff's second Motion to Amend (ECF No. 35) because Plaintiff eventually filed a notice of withdrawal as to his first Motion to Amend, thus Defendants' request to strike is moot.

For all of these reasons, the Court grants in part and denies in part Defendants' Motion for Rule 11 Sanctions and to Strike Motions to Amend Complaint.

### E.  Defendants' Motion to Strike Reply to Response and Plaintiff's Motion for an Extension of Time

Finally, Defendants move for an Order striking Plaintiff's late filed Reply in support of his Motion to file a Third Amended Complaint.  Pursuant to local court rule, Plaintiff's reply brief was due on January 12, 2021.  Plaintiff did not file his

Reply until January 18, 2021.  Local Rule 7.1 states that a reply brief supporting a non-dispositive motion must be filed within seven days of service of a response. *See* E.D. Mich. L.R. 7.1(e)(1)(B).

The Court will deny Defendants' requested relief.  Defendants have failed to identify any prejudice for the six-day delay for the reply brief.  Moreover, once Plaintiff realized the oversight, he filed a motion for an extension of time to submit the reply brief.  Based on these considerations, the Court declines to strike the Plaintiff's reply brief and notes that it considered Plaintiff's reply brief when resolving Plaintiff's Motion to file a Third Amended Complaint.

## VI.   CONCLUSION

Accordingly, for the reasons articulated above, the Defendants' Renewed Motion for Summary Judgment [#30] is GRANTED.

Plaintiff's Motion to Amend [#35] is DENIED.

Defendants' Motion for Rule 11 Sanctions and to Strike Second and Third Motions for Leave to Amend and Supplement and to Strike Motions for Leave to Amend the Complaint [#47] is GRANTED IN PART and DENIED IN PART.

Defendants shall submit their billing statements and affidavits in support of their attorney fees and costs incurred as a result of responding to Plaintiff's (1) first

Motion to Amend and (2) for bringing the Rule 11 Motion for Sanctions. The deadline for submission of these documents is <u>April 26, 2021</u>.

Defendants' Motion to Strike [#48] is DENIED.

Plaintiff's Motion for an Extension of Time to File Reply [#50] is GRANTED.

SO ORDERED.

Dated:        April 13, 2021

<u>s/Gershwin A. Drain</u>
Hon. Gershwin A. Drain
United States District Court Judge

CERTIFICATE OF SERVICE
Copies of this Order were served upon attorneys of record on
April 13, 2021, by electronic and/or ordinary mail.
<u>/s/ Teresa McGovern</u>
Case Manager